UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MEGHAN HODGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 4:21CV261 HEA |
| | ) | |
| MEREDITH CORPORATION OF | ) | |
| IOWA d/b/a KMOV and SCOTT DIENER, | ) | |
| | ) | |
| Defendants, | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Remand, [Doc. No.

12]. Defendants oppose the motion, and Defendant Diener has filed a Motion to

Dismiss. For the reasons set forth below, the Court concludes federal diversity

jurisdiction does not exist, and Plaintiff's motion to remand will be granted.

### Facts and Background

Plaintiff filed this action in the Circuit Court of the City of St. Louis,

Missouri, against Defendants Meredith Corporation of Iowa, d/b/a KMOV and

Diener, an individual. In her state court Petition, Plaintiff alleges she was an

employee of KMOV as a meteorologist from April 2014 to September 17, 2020

and Diener was the News Director for KMOV. She maintains that while employed

by the Corporate Defendant, she was subjected to gender and age discrimination

and was retaliated against by the Corporate Defendant for complaining about the

1

discrimination.  Plaintiff brings her discrimination and retaliation claims against

KMOV under the provisions of the Missouri Human Rights Act, ("MHRA"),

R.S.Mo §§ 213.055 and 213.070, respectively. (Counts I and II). Plaintiff also

alleges a claim against Diener for intentional infliction of emotional distress.

(Count III).

On March 2, 2021, KMOV removed the cause of action to this Court.

Diener filed his consent to removal on March 2, 2021. In its Notice of Removal,

Defendant KMOV alleges this Court has original jurisdiction over the dispute

pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332. Complete

diversity, however, is lacking on the face of the Petition, as Plaintiff and Defendant

Diener are alleged to be citizens of the State of Missouri. Defendant KMOV

argues, however, that Defendant Diener was fraudulently joined to defeat diversity

and, therefore, his citizenship should be disregarded for purposes of diversity

jurisdiction. It argues Count III fails to state a claim against Diener.

Plaintiff filed an Amended Complaint on March 12, 2021 in which

additional allegations against Diener are set out. On March 19, 2021, Plaintiff filed

a motion to remand, which is presently before the Court. The Motion to Remand

asserts complete diversity of citizenship does not exist because Plaintiff and

Defendant Diener share Missouri citizenship. Plaintiff argues she has stated a valid

2

claim against this individual defendant, and the case should be remanded for lack of subject matter jurisdiction.

For the following reasons, the Court concludes Defendant Diener was not fraudulently joined, because it is arguable Missouri state law might impose liability against this non-diverse defendant for intentional infliction of emotional distress. Accordingly, complete diversity of citizenship does not exist and, therefore, the Court does not have subject matter jurisdiction over this action.

### Allegations Relevant to the Motion

Plaintiff alleges in February 2018, Diener planned to remove Plaintiff from her assignment as the No. 2 meteorologist position and reassign those broadcast timeslots to Steve Templeton and Kent Ehrhardt. Diener's proposed reassignment would have diminished the roles of the female meteorologists while expanding the roles and on-air time of the male meteorologists.

Hodge complained to her SAG-AFTRA union representative that Diener planned to demote Hodge because of her gender and because of her age. Within days of her complaint, SAG-AFTRA conducted a meeting with KMOV Human Resource manager Peggy Milner, Diener, Hodge, and the KMOV weather team to address the discrimination reported by Hodge. Immediately after meeting with the full weather team, Hodge and the union representative remained to meet individually with Diener and Milner. In her meeting with Diener, Hodge

challenged Diener about his decision to demote Hodge and Diener told Hodge it wasn't a demotion and that nothing about her job would change.  Hodge disagreed and told Diener that if he reassigned her to weekend weather broadcasts, it would be a demotion without cause.

The next day, Diener met with Hodge's union representative and told him that Diener would not implement his planned reassignments. But Diener threatened to remove Hodge from the No. 2 on-air assignments and give her the fewer weekend assignments when her contract came up for renewal in 2020.

After the February 2018 meeting between Hodge, Diener and the union representative, Diener retaliated against Hodge, and targeted her through a course of conduct intended to harm Hodge and undermine her position as the No. 2 meteorologist at KMOV.  After Hodge complained about Diener, Diener repeatedly interrupted or distracted Hodge during her live broadcasts throughout 2018 and 2019.

The weather drives viewers to watch the local news, including KMOV weather, so, the KMOV meteorologists must present their weather broadcasts to the best of their ability in order to compete for the millions of potential viewers in the KMOV market area.  Intentionally distracting Hodge during her on-air broadcasts undermines and interferes with her performance. Diener's behavior

4

created the constant threat that he would periodically distract Hodge during a

broadcast, causing Hodge anxiety and stress.

In late 2018, Diener created unwritten severe weather broadcast policies that

excluded only Hodge from participating in the broadcast of major weather events.

Beginning in late 2018 and throughout 2019, Hodge reported Diener's conduct to

KMOV's human resource representative and the SAF-AFTRA union

representative, including that Diener was creating a hostile work environment for

Hodge.

In January 2020 Diener demoted Hodge by changing her schedule from 10

weekday broadcasts as the No. 2 meteorologist to 4 weekend broadcasts. These

weekend broadcasts were considered the least important at KMOV. Also, in

January 2020 Diener assigned Hodge to perform weather and general reporting

duties outside the station on 3 of her 5 working days at KMOV. Diener assigned

Hodge to these general reporting duties even though he knew that Hodge did

not have education or experience in general news journalism or reporting.

Hodge had education and experience as a meteorologist broadcasting and reporting

on  weather events and related sciences, the position into which KMOV hired

Hodge.

In January 2020, after Diener demoted Hodge and reassigned her to

general reporting duties, Hodge experienced emotional stress and anxiety so severe

that she began to seek medical treatment. Diener removed Hodge from weather reporting duties and assigned Hodge to report on a bus crash. Diener assigned Hodge to general news reporting duties one day per week and restricted her from reporting on the weather as part of her permanent assignment.

On May 4, 2020 KMOV furloughed all news staff in the form of workday reduction, reducing the workweek from five days to four days per week. Diener directed Hodge to continue with general news reporting duties exclusively for one day of each four-day work week, further reducing the number of days Hodge could work as a meteorologist from 4 days per week to 3 days per week. On the first day of the furlough period, there was a severe weather event that typically required all meteorologists for support and broadcast. Diener, however, directed Hodge to report on a private high school's "senior skip day" rather than participate in covering the severe weather event. Even though KMOV's weather department was understaffed during the furlough period, Diener did not reassign Hodge to her full-time meteorological duties and broadcasts.  Hodge was the only full-time meteorologist assigned to a general news reporting shift.  On September 5, 2020, KMOV lifted the furlough and Hodge returned to her 5-day work week of weekend weather broadcasts and general reporting assignments.

On September 17, 2020, KMOV fired Hodge. As a result of Diener's actions Hodge suffered severe emotional distress that was medically diagnosable and severe enough to be medically significant.

## Legal Standard

For diversity jurisdiction to exist under 28 U.S.C. § 1332(a)(1) there must be complete diversity of citizenship between plaintiffs and defendants. *Buckley v. Control Data Corp.*, 923 F.2d 96, 97, n.6 (8th Cir. 1991). "It is settled, of course, that absent complete diversity a case is not removable because the district court would lack original jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 564 (2005) (cited case omitted). Where complete diversity of citizenship does not exist, 28 U.S.C. § 1447(c) requires a district court to remand the case to state court for lack of subject matter jurisdiction.

Fraudulent joinder is an exception to the rule that complete diversity of citizenship must exist both when the state petition is filed and when the petition for removal is filed. *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011). "[A] plaintiff cannot defeat a defendant's 'right of removal' by fraudulently joining a defendant who has 'no real connection with the controversy.'" *Id*. (quoted case omitted). "The purpose of this exception is to strike a balance between the plaintiff's right to select a particular forum and the defendant's right to remove the case to federal court." *Id*. (cited source omitted).

7

"Ordinarily, to prove that a plaintiff fraudulently joined a diversity-destroying defendant, [the Eighth Circuit Court of Appeals has] required a defendant seeking removal to prove that the plaintiff's claim against the diversity-destroying defendant has 'no reasonable basis in fact and law.' " K*nudson*, 634 F.3d at 977 (quoting *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003)). Under this standard, "if it is clear under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." *Filla*, 336 F.3d at 810 (internal quotation marks omitted). Joinder is not fraudulent where "there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." *Id*. at 811.

> [T]he district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved. In making such a prediction, the district court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor. However, in its review of a fraudulent-joinder claim, the court has no responsibility to definitively settle the ambiguous question of state law.

*Id*. at 811 (citations omitted). The Eighth Circuit instructed that "where the sufficiency of the complaint against the non-diverse defendant is questionable, 'the better practice is for the federal court not to decide the doubtful question ... but simply to remand the case and leave the question for the state courts to decide.'"

8

*Id*. (quoting *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977)).

**Discussion**

In her motion to remand, Plaintiff argues she has stated valid intentional infliction of emotional distress claim against Diener. Diener argues that Plaintiff's claim under the MHRA establishes that his actions were not solely performed to cause emotional distress to Plaintiff. He argues there is no basis for Plaintiff's tort claim against Diener, because the claims arose while she was employed by KMOV and are based on the same facts that form the basis of her MHRA claims.  He also argues Plaintiff's allegations are insufficient to state a cause of action for intentional infliction of emotional distress, hence his accompanying Motion to Dismiss the action against him.

Plaintiff counters that her claims have a reasonable basis in fact, and a Missouri state court might impose liability against defendant Diener. Plaintiff asserts her Amended Complaint sets forth the required elements of common law intentional infliction of emotion distress against Diener.

To state a claim for intentional infliction of emotional distress under Missouri law, a plaintiff must plead "extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997).

9

To be actionable, however, the defendant's conduct must have been " 'intended

only to cause extreme emotional distress to the victim.'" *Id*. (quoting *K.G. v.*

*R.T.R*., 918 S.W.2d 795, 799 (Mo. banc 1996)). Indeed, a claim for intentional

infliction of emotional distress "will not lie where the alleged conduct is intended

to invade other legally protected interests of the plaintiff or intended to cause

bodily harm." *K.G*., 918 S.W.2d at 799.

The allegations and inferences therefrom in the Amended Complaint support

a reasonable inference that Diener's actions were intended only to cause Plaintiff

extreme emotional distress. In her claim for intentional infliction of emotional

distress, Plaintiff incorporates the factual allegations of the Amended Complaint.

She has alleged that she suffered stress, anxiety, and medically diagnosable harm

as a result of Diener's actions. She has sought medical treatment for the anxiety.

She has been medically diagnosed with emotional distress.

The Amended Complaint's allegations set out that Diener's actions targeted

only Plaintiff.  Defendant disrupted only her broadcasts, only demoted Plaintiff and

excluded only Plaintiff from her expertise. Defendant subjected Plaintiff to

humiliating duties.

Taken together, assuming the truth of the allegations in the light most

favorable to Plaintiff, and all reasonable inferences from the allegations, Plaintiff's

claim against the diversity-destroying Defendant Diener could establish a

reasonable basis in fact and law her intentional infliction of emotional distress action against him. Plaintiff is not required to prove the merits of her cause of action at the pleading stage, rather she is required only to set out a plausible claim. *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 556 (2007).

### Conclusion

The Amended Complaint satisfies the *Twombly* standard. As such, Defendant Diener has not established he was fraudulently joined, and this matter must be remanded to the State Court.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand, [Doc. No. 12], is **GRANTED.**

**IT IS FURTHER ORDERED** that this matter is remanded to the Circuit Court for the City of St. Louis, Missouri. *See* 28 U.S.C. § 1447(c).

Dated this 4th day of October, 2021.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE